United States District Court
Southern District of Texas
·FILED

MAY 2 3 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| | § | |
| Plaintiff, | § | No. CIV. **B-03-094.** |
| | § | |
| V. | § | |
| | § | **B-03-198** |
| ISMAEL LOZANO, GERALD MANTHEY | § | |
| LUIS ERNESTO LONGORIA, CARLOS | § | |
| MASSO, KLAUS MEYER, ABRAHAM | § | |
| OCHOA, GEORGE RAMIREZ, PEDRO | § | |
| SANDOVAL, ERIC SOLIS and DUAINE | § | |
| WOHLERS | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF DIRECTV, INC.'S ORIGINAL COMPLAINT

Plaintiff, DIRECTV, Inc. ("DIRECTV"), by its attorney, complaining of the Defendants herein respectfully sets forth and alleges, upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1.     This lawsuit involves the surreptitious possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming. Federal communication and state laws prohibit the assembly, distribution, possession and use of the devices and equipment in question. DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendants for the assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals.

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By_____
                Deputy Clerk

1

## II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS & SUPPORTING SATELLITE PIRACY CLAIMS

`  2.    DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States.  Over the company's life, DIRECTV has invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment purposes (the "Satellite Programming").  DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth.  Those signals are then broadcast back to Earth.  DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish") designed to capture satellite signals.  The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver") which is then connected by cable to a television monitor.

3.    While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not usable without paying DIRECTV a fee to use its television broadcast services.  To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV uses encryption technology to digitally scramble the signal making the signal unusable until it is unscrambled.  The Satellite Receiver is the component that makes descrambling possible.  Each Satellite Receiver contains a removable access card that manages the opening and closing of television channels offered by DIRECTV (the "Access Card").  An access card is identical in size and shape to a credit card, but also holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish.  When properly operated, access cards can be electronically programmed by DIRECTV to close or open

2

television channels. It is, however, the programmable nature of these access cards that is the primary basis for this dispute.

4.    Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing customers to view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite. Through the Access Card, DIRECTV can provide many different levels of service to individual customers. Each customer usually pays for the service on a monthly basis. In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV. The Access Card records those purchases.

5.    DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming. Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to as "Pirate Access Devices"). The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company.

6.    Defendants in this action are residents of the State of Texas. Upon information and belief, each defendant has purchased and used illegal Pirate Access Devices that are

3

designed to permit viewing of DIRECTV's television programming without authorization by, or payment to, DIRECTV.

*DIRECTV Obtained Evidence Related to Fulfillment Pirate Group*

7.    On or about May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local law enforcement, at the mail shipping facility used by several major distributors of Pirate Access Devices, including, among others, Vector Technologies, DSS-Stuff, Shutt, Inc., Intertek, Whiteviper, and DSS-Hangout (collectively referred to hereinafter as the "Fulfillment Pirate Group"). During and subsequent to the raids, DIRECTV obtained a substantial body of shipping records, email communications, credit card receipts and other records. Each of the records confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming. More pertinently, the records evidence each defendant's purchases of Pirate Access Devices from a member of the Fulfillment Pirate Group. In reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the defendants.

8.    Defendants' activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of the defendants' decisions to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against the defendants' continued possession and/or use of Pirate Access Devices.

### III. JURISDICTION

9.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

4

10.    This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§ 521, *et seq.*) (the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. § 2510, *et. seq.*), for violations of Texas law (TEX. CIV. PRAC. & REM. CODE §123, *et seq.*), and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. This Court has jurisdiction of the subject matter to this action under 28 U.S.C. § 1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over the parties in this action. The activities over which DIRECTV complains and giving rise to this action took place in the State of Texas; more particularly, each of the defendants' acts of violating federal laws and DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Southern District of Texas. Further, upon information and belief, each defendant resides within the State of Texas; thus, this Court has personal jurisdiction over each defendant.

## IV. VENUE

12.    Venue is proper in this the United States District Court for the Southern District of Texas under 28 U.S.C. §§ 1391(b) as this action arises under the laws of the United States and each defendant resides within the State of Texas. Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Texas (28 U.S.C. § 124).

5

## V. PARTIES

13.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

14.    Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California. As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing the integrity of its satellite transmissions of television programming and in prohibiting the unauthorized reception and use of the same.

15.    Upon information and belief Defendant, Ismael Lozano ("Defendant Lozano"), resides and/or conducts business in Brownsville, Texas. On or about August of 2000, Defendant Lozano purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Lozano placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about August 1, 2000, Defendant Lozano purchased a combination package invoiced as an "X-Terminator Unlooper/White Viper ISO Programmer." The package was sold as a combo and consisted of an unlooper and a smart card programmer. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. The devices were shipped to Defendant Lozano at Defendant's address in Brownsville, Texas.

6

16.    Upon information and belief Defendant, Gerald Manthey ("Defendant Manthey"), resides and/or conducts business in Harlingen, Texas.  On or about August of 2000, Defendant Manthey purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Manthey placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier.  Specifically, Defendant Manthey made the following purchases:

(a)    On or about August 8, 2000, Defendant Manthey purchased a device invoiced as a "WT2." The package consisted of an unlooper.  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices.  Additionally, on that same day, Defendant Manthey purchased an item invoiced as a "Freeware." The order consisted of a compact disk containing software designed for use to further permit illegal programming of valid DIRECTV access devices.  The devices were shipped to Defendant Manthey at Defendant's address in Harlingen, Texas.

(b)    On or about August 16, 2000, Defendant Manthey purchased a device invoiced as a "Vector."  The order consisted of a smart card programmer primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV.  The device was shipped to Defendant Manthey at Defendant's address in Harlingen, Texas.

17.    Upon information and belief Defendant, Luis Ernesto Longoria ("Defendant Longoria"), resides and/or conducts business in Brownsville, Texas.  On or about April of 2001, Defendant Longoria purchased one or more Pirate Access Devices from the Fulfillment Pirate Group.  Defendant Longoria placed each order using interstate or foreign wire facilities and

7

received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about April 16, 2001, Defendant Longoria purchased a device invoiced as a "White Viper Programmer." The order consisted of a smart card programmer primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. Additionally, on that same day, Defendant Longoria purchased a device invoiced as a "Terminator SU2 Unlooper No/Case." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. The devices were shipped to Defendant Longoria at Defendant's address in Brownsville, Texas.

18.   Upon information and belief Defendant, Carlos Masso ("Defendant Masso"), resides and/or conducts business in Brownsville, Texas. On or about March of 2001, Defendant Masso purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Masso placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about March 19, 2001, Defendant Masso purchased a device invoiced as a "Vector Super Unlooper with SU2 Code." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. The device was shipped to Defendant Masso at Defendant's address in Brownsville, Texas.

19.   Upon information and belief Defendant, Klaus Meyer ("Defendant Meyer"), resides and/or conducts business in Brownsville, Texas. Beginning on or about of April 17,

8

2001, Defendant Meyer purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Meyer placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, Defendant Meyer made the following purchases:

(a)     On or about April 17, 2001, Defendant Meyer purchased a device invoiced as a "MK2 Unlooper-WTXBS." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The device was shipped to Defendant Meyer at Defendant's address in Brownsville, Texas.

(b)     On or about May 10, 2001, Defendant Meyer purchased three devices each invoiced as a "MK2 Unlooper-WTXBS." Each package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The devices were shipped to Defendant Meyer at Defendant's address in Brownsville, Texas.

20.     Upon information and belief Defendant, Abraham Ochoa ("Defendant Ochoa"), resides and/or conducts business in Brownsville, Texas. On or about May of 2001, Defendant Ochoa purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Ochoa placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about May 15, 2001, Defendant Ochoa purchased a device known as an "Atomic Multi Purpose." The device is a multi-purpose device designed to be used as a programmer, an unlooper and a loader.

9

The programmer component of the device is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. The unlooper component of the device is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The loader component of the device allows the surreptitious interception of DIRECTV Satellite Programming, providing Defendant access to DIRECTV programming without payment. The device was shipped to Defendant Ochoa at Defendant's address in Brownsville, Texas.

21.     Upon information and belief Defendant, George Ramirez ("Defendant Ramirez"), resides and/or conducts business in Brownsville, Texas. On or about April of 2001, Defendant Ramirez purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Ramirez placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about April 4, 2001, Defendant Ramirez purchased a Pirate Access Devices from the Fulfillment Pirate Group consisting of a printed circuit board device invoiced as a "Vector Smart Card Emulator," designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. Additionally, on that same day, Defendant Ramirez purchased a device invoiced as a "Vector Super Unlooper with SU2 Code." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. The devices were shipped to Defendant Ramirez at Defendant's address in Brownsville, Texas.

10

22.    Upon information and belief Defendant, Pedro Sandoval ("Defendant Sandoval"),

resides and/or conducts business in Brownsville, Texas. On or about April of 2001, Defendant

Sandoval purchased one or more Pirate Access Devices from the Fulfillment Pirate Group.

Defendant Sandoval placed each order using interstate or foreign wire facilities and received

orders through the United States Postal Service or commercial mail carrier. Specifically,

Defendant Sandoval made the following purchases:

(a)    On or about April 5, 2001, Defendant Sandoval purchased a device

invoiced as a "Vector Super Unlooper with SU2 Code." The package consisted of an unlooper.

The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate

use and is specifically designed for use with "SU2 Code" further permitting the illegal

programming of valid DIRECTV access devices. The device was shipped to Defendant

Sandoval at Defendant's address in Brownsville, Texas.

(b)    On or about April 24, 2001, Defendant Sandoval purchased a Pirate

Access Devices from the Fulfillment Pirate Group consisting of a printed circuit board device

invoiced as a "Vector Smart Card Emulator," designed specifically to permit the surreptitious

interception of DIRECTV Satellite Programming. The device was shipped to Defendant

Sandoval at Defendant's address in Brownsville, Texas.

23.    Upon information and belief Defendant, Eric Solis ("Defendant Solis"), resides

and/or conducts business in Harlingen, Texas. On or about April of 2001, Defendant Solis

purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant

Solis placed each order using interstate or foreign wire facilities and received orders through the

United States Postal Service or commercial mail carrier. Specifically, Defendant Solis made the

following purchases:

11

     (a)    On or about April 2, 2001, Defendant Solis purchased a device invoiced as a "Vector Fusion." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The device was shipped to Defendant Solis at Defendant's address in Harlingen, Texas.

     (b)    On or about April 4, 2001, Defendant Solis purchased a Pirate Access Devices from the Fulfillment Pirate Group consisting of a printed circuit board device invoiced as a "Terminator Emulator," designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. The device was shipped to Defendant Solis at Defendant's address in Harlingen, Texas.

    24.    Upon information and belief Defendant, Duaine Wohlers ("Defendant Wohlers"), resides and/or conducts business in Harlingen, Texas. On or about May of 2001, Defendant Wohlers purchased one or more Pirate Access Devices from the Fulfillment Pirate Group. Defendant Wohlers placed each order using interstate or foreign wire facilities and received orders through the United States Postal Service or commercial mail carrier. Specifically, on or about May 7, 2001, Defendant Wohlers purchased a device invoiced as a "Vector Super Unlooper with SU2 Code." The package consisted of an unlooper. The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with "SU2 Code" further permitting the illegal programming of valid DIRECTV access devices. The devices were shipped to Defendant Wohlers at Defendant's address in Harlingen, Texas.

    25.    Defendants are sometimes hereinafter collectively referred to as "Defendants."

12

26.    Upon information and belief, Defendants received Pirate Access Devices through various mail sources, effectively importing such illegal devices into the State of Texas; each Defendant has a reason to know that such device is used to illicitly decrypt Satellite Programming. Upon information and belief, Defendants displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV. Importantly, Defendants' possession and use of Pirate Access Devices provides them access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendants were capable of viewing without authorization may easily reach thousands of dollars in a single year.

27.    On information and belief, DIRECTV alleges that Defendants received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable them to unscramble, receive, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendants.

28.    More importantly, upon information and belief certain of the Defendants may have been engaged in an enterprise to distribute and/or resell the devices purchased from the Fulfillment Pirate Group. Upon information and belief, these Defendants profited from their enterprise.

13

## VI. DISCOVERY OF ILLEGAL CONDUCT

DIRECTV devotes significant resources to preventing the unauthorized reception of its Satellite Programming and identifying persons or businesses engaged in such illegal activity. Despite these efforts, DIRECTV first learned of Defendants' identities and their respective involvement in pirating Satellite Programming after the raids occurring in May of 2001.

## VII. CAUSES OF ACTION

### Count 1 - Damages for Violations of Cable Communications Policy Act
(47 U.S.C. § 605(e)(3)(C))

29.    DIRECTV incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

30.    DIRECTV alleges on information and belief, that Defendants effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite Programming where Defendants are located, or by such other means which are unknown to DIRECTV and known only to Defendants.

31.    Each Defendant's acts violate federal law. Defendants, illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception, or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, upon information and belief, Defendants divulged or published the existence contents, substance, purport, effect or meaning of such satellite communications. Further, upon information and belief, Defendants used such communications for their own benefit or for the benefit of others who were not entitled to such communications. Each of these acts is a practice prohibited by 47 U.S.C § 605(a).

14

32.     DIRECTV is a person aggrieved by the Defendants' violations of 47 U.S.C. § 605 and is authorized to institute this action against each of the Defendants pursuant to 47 U.S.C. § 605 (e)(3)(A).

33.     Defendants' violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming as DIRECTV has been deprived of the benefit of subscribers to the Satellite Programming.   DIRECTV is entitled to costs, reasonable attorneys' fees, actual damages suffered, and profits obtained by Defendants attributable their illegal conduct.

<u>34.</u>     Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. § 605(a).

### Count 2 - Damages for Violations of 18 U.S.C. § 2511

35.     DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

36.     For further cause of action, DIRECTV alleges that Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV.  Defendants further disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.  Upon information and belief, Defendants further intentionally used or endeavored to use the contents of electronic communications knowing, or having reason to know, that the information was obtained through the interception of electronic communications in violation of 18 U.S.C § 2511.

37.     DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2511.

38.     Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by each Defendant as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. § 2511.

### Count 3 - Damages for Possession, Manufacture, and/or Assembly of
### Electronic, Mechanical or Other Device or Equipment
### (18 U.S.C. § 2512)

39.     DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

40.     By way of its third cause of action, DIRECTV alleges that Defendants possessed, manufactured, and/or assembled an electronic, mechanical or other device knowing, or having a reason to know, that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire or electrical communications and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.  More particularly, Defendants themselves, or someone at their direction, sent and/or received Pirate Access Devices by means of the United States Postal Service or commercial mail carrier.

41.     DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C § 2512.

42.     Due to Defendants' wrongful conduct, DIRECTV is entitled, under 18 U.S.C. § 2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of

Defendants' conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendants acted in violation of 18 U.S.C. § 2512.

### Count 4 - Damages for Willful Assembly or Modification
### of Devices or Equipment
### (47 U.S.C. § 605(e)(4))

43.    DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

44.    Upon information and belief, Defendants knowingly, manufactured, assembled, or modified an electronic, mechanical or other device or equipment knowing, or having reason to know, that the device or equipment is used primarily in the assistance of the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or is intended for any other prohibited activity.  Upon information and belief, Defendants actively programmed and reprogrammed DIRECTV Access Cards and designed electronic systems for use in surreptitiously obtaining DIRECTV Satellite Programming.  Further, by removing and inserting Pirate Access Devices and/or inserting illegally programmed Access Cards into valid DIRECTV Receivers, Defendants engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

45.    Such conduct by each Defendant violates 47 U.S.C § 605(e)(4) and such activity entitles DIRECTV to statutory damages in a sum not less than $10,000 or more than $100,000, as the Court considers just for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

46.    DIRECTV is a person aggrieved by the Defendants' independent violations of 47 U.S.C. § 605 and is authorized to institute this action against the Defendants pursuant to 47 U.S.C. § 605 (e)(3)(A).

17

### Count 5 - Civil Conversion

47.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

48.    By virtue of the conduct set forth above, Defendants have unlawfully converted DIRECTV's property for their own commercial use and benefit.

49.    Such conversion was done intentionally and wrongfully by Defendants to deprive DIRECTV of its proprietary interests and for Defendants' direct benefit and advantage.

50.    Due to Defendants' wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

### Count 6 – Interception of Communication
### (TEX. CIV. PRAC. & REM. CODE § 123.001, *et. seq.*)

51.    DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

52.    DIRECTV transmits satellite communications in part by wire or cable.  More specifically, the Satellite Dish, receivers, and television necessary to utilize DIRECTV's Satellite Programming are connected by wire and cable.  Finally, DIRECTV's Satellite Programming contains information that is obtained and/or perceived by aural acquisition, particularly including all audio communication services that accompany video transmissions.

53.    Upon information and belief, Defendants acquired and/or used Pirate Access Devices to intercept, or attempt to intercept, DIRECTV's Satellite Programming information constituting an extraordinary use of satellite and television viewing equipment.  Defendants' conduct violates Chapter 123 of the Texas Civil Practices and Remedies Code.  As a result of Defendants' conduct, DIRECTV may obtain statutory damages of $10,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs.

18

## VIII. <u>REQUEST FOR INJUNCTIVE RELIEF</u>

54.     DIRECTV realleges and incorporates the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

55.     DIRECTV further alleges that unless restrained by this Court, the Defendants will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. § 605.

56.     The violations of 47 U.S.C. § 605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

57.     DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendants' unlawful conduct.  In addition to diminishing DIRECTV's revenues, the Defendants' unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming thereby impairing DIRECTV's ability to enhance its future growth and profitability.  DIRECTV has no adequate remedy at law to redress the violations set forth above.

58.     Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. § 2520(b)(1).  DIRECTV requests that Defendants be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. <u>PRAYER</u>

WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendants in the form as follows:

    a.    Declare that Defendants' assembly, modification, distribution, and possession of illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or their assistance in the performance

of such unauthorized actions, is a violation of 47 U.S.C. § 605, 18 U.S.C. §§ 2511 & 2512, and TEX. CIV. PRAC. & REM. CODE § 123.002.

b.    Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. § 605, plus an additional $100,000.00 for each violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 47 U.S.C. § 605;

c.    Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendants violated 18 U.S.C. § 2511 and/or § 2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendants' violations of 18 U.S.C. §§ 2511 or 2512;

d.    Alternatively, award DIRECTV statutory damages of $10,000 for each violation of TEX. CIV. PRAC. & REM. CODE § 123.002;

e.    In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin Defendants, and all persons in active concert or participation with any of them, from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f.    That this Court award DIRECTV punitive damages as provided by statutory law;

g.    That this Court award DIRECTV its costs, including reasonable attorneys' fees, pre-judgment and post-judgment interest, and

h.    Such other relief to which DIRECTV may be entitled.

DATED this 23rd day of May 2003.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
     Lecia L. Chaney
     State Bar No. 00785757
     Fed. I.D. #16499

20

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telefax    : (956) 541-2170

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320
**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx  77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)